IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PAUL VINCENT LOCKETT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09-CV-36-TMH |
| | ) | |
| | ) | |
| JEREMIAH MATTHEWS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Paul Vincent Lockett ["Lockett"], a state
inmate, challenges the constitutionality of actions taken against him during his
incarceration at the Ventress Correctional Facility ["Ventress"]. Lockett  names as
defendants in this case Jeremiah Matthews, a drug counselor employed at Ventress;
Richard Allen, Commissioner of the Alabama Department of Corrections; J. C. Giles,
the warden at Ventress; Mary Taylor, a correctional captain employed at Ventress;
and Johnzaline Jackson, a correctional officer employed at Ventress,.[1] The allegation

---

[1] Lockett filed an amended complaint on March 20, 2009, and added as defendants,
Richard Allen, J. C. Giles, Captain Tyler and Officer J. Jackson. *Doc. No. 12, Lockett's
Amended Complaint*.  This court ordered that these individuals be added as defendants on March
23, 2009. *Order of March 23, 2009 Court Doc. No.* 14. Lockett initially listed Captain Tyler as
a defendant in his amended complaint. In their special report, the defendants advise that the
correct name for this defendant is Captain Mary Taylor and Lockett does not dispute the proper
name as supplied by the defendants. Thus, the court will refer to this defendant by her correct
name.

central to Lockett's complaint is that on December 18, 2008, Counselor Matthews used excessive force against him. Lockett also contends that Officer Jackson acted with deliberate indifference to his safety. Lockett seeks a declaratory judgment and monetary damages for the alleged violations of his constitutional rights. *Plaintiff's Complaint - Court Doc. No. 1* at 4. Lockett also demands a trial by jury. *Plaintiff's Response to the April 30, 2009 Special Report - Court Doc. No. 30* at 1.

The defendants filed an answer, a special report and supporting evidentiary materials addressing Lockett's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat the special report as a motion for summary judgment. *Order of June 12, 2009 Court Doc. No. 29*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof and Lockett's response in opposition to this motion, the court concludes that the motion for summary judgment with respect to the excessive force claims against Counselor Matthews in his individual capacity is due to be denied, and the motion for summary judgment with respect to the claims against Commissioner Allen, Warden Giles, Captain Taylor and Officer Jackson is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgement as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

_____

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word - genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* '"Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")   A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).   Consequently, to survive the defendants' properly supported motion for summary judgment, Lockett is required to produce "sufficient

4

[favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a

plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact on a necessary element of his claim. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670

7

(11th Cir. 1990).   Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

### III. FACTS[3]

On December 18, 2008, Lockett was outside in the yard in front of Dormitory C when he asked Officer Jackson if he could go inside the building to use the restroom.   *Plaintiff's Amended Complaint - Court Doc. No. 12* at 1.    It was approximately 2:45 p.m. and Officer Jackson informed Lockett that he needed to wait until 3:30 p.m.   *Id.*   Lockett  walked away from the dorm and told another inmate, Sonja Underwood, that "this shit is crazy."   *Id.*

Shortly thereafter, Counselor Matthews approached Lockett  and stated that he was "tired of y'all punk mother-fuckers talking to [him] any kind of way y'all want to."   *Id.*   Counselor Matthews asked Lockett to give him his I.D. card and informed Lockett that he was going to terminate him from the Substance Abuse Program, in which Lockett was a participant.   *Id.*   Lockett complied with Counselor Matthews request and followed him into his office to sign the paperwork.   *Id.*

---

[3] At this stage of the proceedings, this court takes the facts alleged by Lockett as true and construes them in the light most favorable to him.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party,'" ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ...  Moreover, the court must avoid weighing conflicting evidence or making credibility determinations...."). Thus, the facts set forth herein are drafted assuming all allegations presented by Lockett are true.

Once inside Counselor Matthews' office, Lockett refused to sign the paperwork,  placed a big mark on the paper and left the office.  *Plaintiff's Amended Complaint - Court Doc. No. 12* at 1.  Counselor Matthews ordered Lockett to return to his office.  *Id.*  Lockett stated to Counselor Matthews that "you did your job and I'm done with it."  *Id.*  Lockett  attempted once more to leave Counselor Matthews office, at which point Counselor Matthews told him to return to the office and  that "he should slap [him] up side [his] mother-fucking head."  *Id.*  Lockett replied to  Counselor Matthews that "he don't have any reason to put his hand on [him]."  *Id.*

As Lockett began to walk away again, Counselor Matthews called back and said "you mother-fucker I will slap you and you can't do a dam [sic] thing about it."  *Id.*  Lockett told Counselor Matthews that he (Counselor Matthews) was not going to hit him.  *Plaintiff's Amended Complaint - Court Doc. No. 12* at 1.  This statement prompted Counselor Matthews to "put his hands up like two fists to provoke [Lockett] to fight him."  *Id.*  In response, Lockett turned to walk away when suddenly Counselor Matthews grabbed Lockett by the neck and slammed his body against the door so hard that the door handle left a dent in the wall  *Id.*; *Witness Sonja Renall's Amended Statement of Incident - Court Doc. No. 10* at 1; *Plaintiff's Complaint (Witness Antony Hanna's Statement of Incident) - Court*

*Doc. No. 1* at 6.

Upon noticing that Lockett was in pain, Counselor Matthews removed

Lockett from his grip and told him "I should kick your ass again." *Id.* at 2.  At this

time, Ms. Delicia Mcgee, one of the other counselors, grabbed Counselor

Matthews and pulled him into the office. *Id.*  Another officer arrived and asked

Lockett about the incident and Lockett explained to the officer what happened. *Id.*


At approximately 3:15 p.m., Officer Ronnie Campbell accompanied Lockett

to the Health Care Unit. *Defendant's Exhibit C to the April 30, 2009 Special*

*Report (Incident Report) - Court Doc. No. 23* at 4.  Nurse Diane Teal examined

Lockett and noted the he denied any injury, abrasion, or bruising. *Id.* at 6.  She

also noted that he had complained of being pushed into a wall. *Id.*  Based on her

evaluation of Lockett, nurse Teal determined that no treatment or provision of

medication was necessary. *Id*.

## IV.  DISCUSSION

### A.  Absolute Immunity

With respect to any claims Lockett lodges against the defendants in their

official

capacities, they are entitled to absolute immunity from monetary damages.

Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

There is no dispute about whether the defendants are state actors. Consequently, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). This court therefore concludes that all of the defendants are entitled to summary judgment with respect the claims against them in their official capacities.

## B. Respondeat Superior

Neither Lockett's complaint nor any evidentiary materials show that Commissioner Allen or Warden Giles had anything to do with any harm alleged by Lockett.    Thus, Commissioner Allen is sued solely due to his position as Commissioner of the Alabama Department of Corrections and Warden Giles is sued solely due to his position as Warden of Ventress Correctional Facility.  However, the law is well settle that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability).    Thus, Commissioner Allen and Warden Giles are liable in the present cause of action only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cotton v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

Lockett does not allege that Commissioner Allen or Warden Giles personally participated in the actions about which he complains.  Additionally, Lockett fails to

present any facts which indicate a causal relationship between an action undertaken or policy enacted by Commissioner Allen or Warden Giles and the alleged constitutional deprivations. A supervisory official "may be liable only for implementing a policy that is 'itself [ ] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.' *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)." *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2006). Consequently, the claims against Commissioner Allen and Warden Giles lack an arguable basis in law and therefore are due to be dismissed.

Moreover, although Captain Taylor is named in the amended complaint as a defendant, Lockett does not allege that Captain Taylor took any action against him. Based on the facts at hand, Captain Taylor did not engage in the use of excessive force against Lockett. This court therefore concludes that the motion for summary judgement filed by Captain Taylor is due to be granted.

### C.  Deliberate Indifference to Safety - Failure to Protect

To the extent Lockett argues Officer Jackson acted with deliberate indifference to his safety in failing to protect him from assault by Counselor Matthews, he is likewise entitled to no relief. A correctional official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with

such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh*, 268 F.3d at 1028.

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*,

14

511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th

Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have

perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480,

1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary

lack of due care for the prisoner's interests or safety....  It is ***obduracy and***

***wantonness, not inadvertence or error in good faith***, that characterize the conduct

prohibited by the Cruel and Unusual Punishments Clause, whether that conduct

occurs in connection with establishing conditions of confinement, supplying medical

needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*,

475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury

must be a strong likelihood, rather than a mere possibility before a [correctional

official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894

F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the

15

foregoing makes clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*.

Pursuant to the aforementioned criteria, Lockett is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim against the supervisory officials. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

The record is completely devoid of evidence that the altercation with Counselor Matthews occurred due to deliberate indifference on the part of Officer Jackson. Lockett presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by Officer Jackson, each of which is a required element of the instant Eighth Amendment claim. "Plaintiff has failed to establish that this Defendant had a

subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Carter*, 352 F.3d at 1350 (footnote omitted).  Consequently, the motion for summary judgment with respect to Lockett's claim that Officer Jackson acted with deliberate indifference to his safety by failing to "call a code"[4] or otherwise intervene during the altercation is due to be granted.

### D.  The Excessive Force Claim

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson*, 503 U.S. at 8.  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id.* (internal quotations omitted).  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  *Id.*  However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does

---

[4] *See Witness Sonja Renall's Amended Statement of Incident - Court Doc. No. 10 at 1.*

not suffer serious injury." *Id.* at 4. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue and excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, __ U.S. ___, ____, 130 S.Ct 1175, 1178-79 (2010).

Lockett maintains that Counselor Matthew's actions on December 18, 2008 constituted an unnecessary and excessive use of force against him because the assault was committed in the absence of need or provocation and done maliciously and/or sadistically. *Plaintiff's Amended Complaint - Court Doc. No. 12* at 1-2. Lockett further asserts that as a result of Counselor Matthews' conduct he suffered injuries to his back and neck and continues to suffer pain as a result of the injuries. *Plaintiff's Response to the April 30, 2009 Special Report - Court Doc. No. 30* at 1. Counselor Matthews adamantly denies the allegations made against him. Specifically, he asserts that the force he utilized did not rise to the level of excessive force in violation of Lockett's constitutional rights. Counselor Matthews further argues that he acted in an effort to protect himself from the threatening manner he believed Lockett exhibited. *Defendants' Exhibit A to the April 30, 2009 Special Report (Affidavit of Jeremiah Matthews) - Court Doc. No. 23-1* at 2.

According to the defendants, on December 18, 2008, Counselor Matthews was in his office when he overheard "a lot of profanity" outside of C-Dorm. *Id.;*

18

*Defendants' Exhibit B to the April 30, 2009 Special Report (Affidavit of Johnzaline Jackson) - Court Doc. No. 23-2* at 2.  Lockett began cursing after Officer Jackson refused to allow him back into the dormitory to use the bathroom.  *Defendants' Exhibit B to the April 30, 2009 Special Report (Affidavit of Johnzaline Jackson) - Court Doc. 23-2* at 2.  Counselor Matthews walked outside to determine if the profanity was being used by a member of the Substance Abuse Program (SAP). *Defendants' Exhibit A to the April 30, 2009 Special Report (Affidavit of Jeremiah Matthews) - Court Doc. No. 23-1* at 2.  Counselor Matthews witnessed Lockett using profanity toward Officer Jackson and overheard another inmate advise him that "he needed to stop using all that profanity" because he could be terminated from SAP. *Id.*  Lockett stated that he "[didn't] care about a write up," and continued using profanity. *Defendants' Exhibit B to the April 30, 2009 Special Report (Affidavit of Johnzaline Jackson) - Court Doc. No. 23-2* at 2.  Counselor Matthews ordered Lockett to bring him his I.D. Card and report to his office. *Defendants' Exhibit A to the April 30, 2009 Special Report (Affidavit of Jeremiah Matthews) - Court Doc. No. 23-1* at 2.  Lockett complied and the two men entered Counselor Matthews' office. *Id.*

Counselor Matthews informed Lockett that he was going to be terminated from SAP for violating Cardinal Rule #4 of the Treatment Program Rules, "No Verbal or

Physical Aggression, Violence or Threats of Violence" as well as ADOC rule "Failure to Obey a Direct Order." *Id.* When Counselor Matthews presented the termination paperwork to Lockett for him to sign, Lockett placed a big mark on the paper and left the office. *Id.* Counselor Matthews called Lockett back into his office and told him that he had not given him permission to leave. *Id.* Lockett returned to the office "very aggressively" and Counselor Matthews again told him to sign the paper. *Id.* Lockett stated that "he signed it and was not going to do shit else." *Id.* Lockett then "aggressively brushed up against" Counselor Matthews in an attempt to leave the office once more. *Defendants' Exhibit A to the April 30, 2009 Special Report (Affidavit of Jeremiah Matthews) - Court Doc. No. 23-1* at 2. When Counselor Matthews asked Lockett to return once again, Lockett "began to make verbal threats that he was not going to do a mother-fucking thing and if [Counselor Matthews] [kept] fucking with him, he would do more than bump [Counselor Matthews]." *Id.* at 2-3. Locket headed towards Counselor Matthews in a "threatening manner." *Defendants' Exhibit B to the April 30, 2009 Special Report (Affidavit of Johnzaline Jackson) - Court Doc. No. 23-2* at 2. In an effort to protect himself, Counselor Matthews grabbed Lockett by the hand and the collar of his shirt and pinned him to the door of Dormitory C. *Defendants' Exhibit A to the April 30, 2009 Special Report (Affidavit of Jeremiah Matthews) - Court Doc. No. 23-1* at 3. When Officer Jackson

20

approached, Counselor Matthews let go of Lockett and returned to his office. *Id.*
Counselor Matthews concedes that he did push Lockett up against the door, but
maintains that he did not use any unnecessary force on Lockett. *Id.* Counselor
Matthews also disputes the statements from Lockett's witnesses that he slammed
Lockett into the door hard enough to damage the wall. *Id.* Counselor Matthews
explained that "the damage to the wall resulted from the wind continuing to blow
[the] door open because [the] door has no support to prevent it from blowing open
with force." *Id.*

In his response to the defendants' special report, Lockett disputes that he
denied any injury from the incident and maintains that his constitutional rights were
violated. *Plaintiff's Response to the April 30, 2009 Special Report - Court Doc. No.
30* at 1. However, Counselor Matthews argues that Lockett's body chart dated
December 18, 2008 shows that Lockett denied any injury from the incident and thus
any injuries are merely *de minimis* causing his excessive force claim to fail.
However, in light of *Wilkins*, this court must conclude that the *de minimis* nature of
an inmate's injuries is not dispositive of an excessive force claim. *Wilkins*, 130 S.Ct
at 1176 (Dismissal of "a prisoner's excessvie force claim based entirely on . . . [a]
determination that his injuries were '*de minimis*' [is improper] . . . [as it] is at odds
with *Hudson's* direction to decide excessive force claims based on the nature of the

force rather than the extent of the injury . . . .").  The nature of the injuries suffered by Lockett will, however, remain relevant to this court's determination of whether the assault by Counselor Matthews occurred as described by Lockett and whether Counselor Matthews acted "maliciously and sadistically" during the incident under review.  *Id.* at 1178-80.  Additionally, even if Lockett succeeds on the merits of his excessive force claim, the minor "nature of his . . . injuries will no doubt limit the damages he may recover."  *Id.* at 1180.

Counselor Matthews further argues that he is entitled to qualified immunity on Lockett's claims of excessive force.  The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  Thus, a qualified immunity defense is not available when a plaintiff asserts the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment.  *Skrtich*, 280 F.3d at 1302; *see also Hudson*, 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  Accordingly, this court will consider whether Lockett's allegations that Counselor Matthews

maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

In *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), the Eleventh Circuit explained that whether a defendant's use of force is excessive, and thus violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act 'shocks the conscience.' *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was applied ... maliciously and sadistically for the very purpose of causing harm.' " *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore
> discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is

23

tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Id.* 503 U.S. at 9; *but see Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force , provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327). *See also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim).

The court is mindful of the fact that prisoners' non-compliance with the rules and regulations of a jail and the orders and directives of their custodians is not easily tolerated in a prison environment where strict adherence to rules and order within the institution's walls are mandated for security, safety, and discipline. Nevertheless,

Lockett maintains that although he did use profanity and refused to sign the paperwork, he at no time during the incident in question posed a threat to Counselor Matthews.  Lockett therefore argues that Counselor Matthews' alleged use of force under these circumstances was excessive and violated his constitutional rights. Counselor Matthews denies Lockett's allegation regarding the amount of force he used and maintains that the force utilized did not constitute excessive force in violation of Lockett's constitutional rights.

Viewing the facts in the light most favorable to Lockett, as is required at this stage of the proceedings, the court concludes that Lockett has set forth facts from which a reasonable jury could conclude that Matthews violated his constitutional rights.  "Having established a constitutional violation, the next step in the qualified immunity analysis usually is to determine whether the right was clearly established. *See Saucier*, 533 U.S. 201, 121 S.Ct. at 2156.  However, we have held that 'there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful.  *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002);" *Danley*, 540 F.3d at 1310.  Under the facts as presented by Lockett, a genuine dispute of material fact exists regarding the incident in question, the need for the use of force, whether the amount of force used

was appropriate and whether Counselor Matthews acted "maliciously and sadistically" to cause harm.  Thus, Counselor Matthews is  not entitled to qualified immunity at this time, *Id.*; *Skrtich*, 280 F.3d at 1301, and his request for summary judgment with respect to Lockett's excessive force claim against him in his individual capactiy is due to be denied.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgement with respect to the claims against the defendants in their official capacity (*Doc. No. 23*) be GRANTED.

2.  The motion for summary judgment with respect to the claims against Commissioner Allen,  Warden  Giles, Captain Taylor and Officer Jackson (*Doc. No. 23*) be GRANTED and Commissioner Allen, Warden Giles, Captain Taylor and Officer Jackson be dismissed as defendants in this case;

3.  The motion for summary judgment with respect to the excessive force claim against Counselor Matthews in his individual capacity (*Doc. No. 23*) be DENIED;

4.  Plaintiff's § 1983 excessive force claim against Counselor Matthews in his individual capacity  be SET for trial by jury.

It is further

ORDERED that on or before **October 21, 2011,** the parties may file objections

to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party form attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 7th day of October, 2011.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE